THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAMUEL FEINBERG *et al.* Plaintiffs in Error.

*Opinion filed December 15, 1908.*

1. CRIMINAL LAW—*when person may be convicted of crime of receiving stolen property.* One indicted for the crime of receiving stolen property may be convicted of the offense charged although the evidence shows he was an accessory before the fact, if he was not present at the actual time of the conversion of the goods.

2. SAME—*evidence of self-confessed accomplice may be sufficient to convict.* A conviction may be sustained although the only evidence of guilt is that of self-confessed accomplices, but such evidence is open to grave suspicion and should be acted upon with the utmost caution.

3. SAME—*instructions must be accurate where evidence is close.* Where the evidence in a criminal case is sharply conflicting on material points the instructions should state the law applicable to the facts with accuracy.

4. SAME—*when giving instruction assuming fact is reversible error.* In a prosecution for receiving stolen property it is reversible error to give an instruction assuming the fact that the defendant accepted the property, where that fact is denied by defendant and his denial is to some extent corroborated, and where none of the stolen property was found in his possession and the only evidence against him is the testimony of self-confessed accomplices.

5. SAME—*what evidence is competent in a prosecution for receiving stolen property.* In a prosecution for receiving stolen property, consisting of pig iron, which it is charged was bought by the defendant from teamsters engaged in hauling it to the owner's place of business, it is not error to allow a witness employed by a foundry company to testify that the defendant, about the time of the offense charged, offered to sell the foundry company some pig iron which he claimed he was expecting to obtain from Indiana, but that he did not, in fact, sell or deliver any.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JAMES T. BRADY, and EDWIN J. RABER, for plaintiffs in error:

A conviction based upon the uncorroborated evidence of an accomplice, where the accomplice is contradicted by the accused, who is corroborated by other evidence, or a conviction based upon the unsupported evidence of a discredited witness, who is contradicted by the accused, whose reputation for honesty is abundantly proven and otherwise corroborated, cannot stand as a matter of law. *Campbell* v. *People,* 159 Ill. 9; *Cohen* v. *People,* 197 id. 482; *Keller* v. *People,* 204 id. 604; *Cunningham* v. *People,* 210 id. 410.

One accomplice cannot corroborate another. 1 Am. & Eng. Ency. of Law, 405; 12 Cyc. 458; *United States* v. *Hinz,* 35 Fed. Rep. 278; *People* v. *Creegan,* 53 Pac. Rep. 1082; *Whitlow* v. *State,* 18 S. W. Rep. 865; *Howard* v. *Commonwealth,* 61 id. 756.

The question whether the defendants received the property alleged in the indictment being in dispute, it was reversible error for the court to give the instruction assuming that the defendants received the property. *Foglia* v. *People,* 229 Ill. 291; *Miller* v. *People,* 229 id. 382; *Hammond* v. *People,* 199 id. 173; *Chambers* v. *People,* 105 id. 409; *Scott* v. *People,* 141 id. 211.

Where the evidence upon material points is conflicting the instructions must be accurate. *Miller* v. *People,* 229 Ill. 381; *Swan* v. *People,* 98 id. 610; *Adams* v. *People,* 179 id. 633; *Chambers* v. *People,* 105 id. 409.

The indictment charges receiving stolen property; the proof was larceny. This is a fatal variance, and the court erred, at the close of the State's case, in denying defendants' motion to direct a verdict finding the defendants not guilty. 25 Cyc. 59; 2 Bishop's New Crim. Law, sec. 1140; *State* v. *Larken,* 49 N. H. 42; *State* v. *Honig,* 78 Mo. 252.

WILLIAM H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (HOBART P. YOUNG, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error were indicted in the criminal court of Cook county on the charge of unlawfully buying and receiving six thousand pounds of pig iron, of the value of one cent a pound, knowing that it had been stolen. They were found guilty in said court and sentenced to the penitentiary, and the case is brought here by writ of error.

The Crane Company is a corporation doing business at 219 Jefferson street, Chicago, and handles large quantities of pig iron. William Gallagher and Peter Briody were teamsters for the company during the year 1905, their principal duty being to haul pig iron from the railways to the foundry. Plaintiffs in error during that year were partners, engaged in the scrap iron and metal business at 197 West Taylor street, in Chicago. Gallagher testified that some time in August, 1905, while he was hauling a load of pig iron belonging to the Crane Company, the plaintiff in error Shaffer met him on the street and asked him if he did not wish to get rid of a part of the load; that he replied that he did not mind if he did, and was directed by Shaffer to drive through an alley and into the rear of the plaintiffs in error's place of business on Taylor street; that Shaffer opened the gates and witness threw out several pieces of pig iron, for which he was paid by Feinberg a dollar, which, upon his objection, was increased to $1.50. Gallagher further testified that from August to December 21, 1905, at least four or five different times he drove a load of pig iron into the rear of plaintiffs in error's yard and sold a few pieces of the iron, getting from one dollar to two dollars a time; that he knew that Briody during these months did the same thing, and on various trips they were together;

that on December 22, 1905, they were driving together from the railway yards, each with a load of pig iron; that some two blocks away from plaintiffs in error's place of business they left one of the wagons and drove with the other through the alley to the rear of plaintiffs in error's yard and sold the entire load, receiving therefor $10 from plaintiffs in error, the iron being unloaded into a manure pile in the yard and covered up. He further stated that Briody left the yard before he did and drove the other load of iron down and unloaded it at the Crane Company's plant, and that he waited on the street with his empty wagon until Briody came and then they went for another load. Briody also testified for the State and agreed substantially with the testimony of Gallagher. They both also testified that plaintiff in error Feinberg gave Gallagher a bottle of wine and Briody a box of cigars for a Christmas present in December, 1905. The testimony shows that Gallagher had been employed by the Crane Company for about four years previous to December 22, 1905, and left in February, 1906; that Briody had been in its employ about twenty years previous to December 22, 1905. Some time in 1906 plaintiffs in error dissolved partnership. Briody testified that in November, 1906, he went to 197 West Taylor street with a wagon load of pig iron and was told by Feinberg to drive out at once,—that he did not want to buy any pig iron,—and that witness then drove out and took the iron to the Crane Company. Shortly thereafter, on the same day, he was called into the office of the company, and having been accused of having taken and disposed of pig iron at various times, confessed to the facts as above stated and was then discharged. Gallagher was thereafter called in, and he also admits that he confessed to the entire transactions, the same as he testified on this proceeding. The State also proved by one Novotny that he had been employed by the Bar Foundry Company in Chicago, and that during November, 1906, he had a conversation with Feinberg in

which the latter offered to sell the Bar Foundry Company some pig iron which he claimed he expected to obtain from Indiana, but that no pig iron was ever sold or delivered by said Feinberg to said company. Feinberg testified that he had never seen Briody until the occasion in November, 1906, when he drove in the yard and wanted to sell pig iron and was ordered out, and that he had never seen Gallagher until the time of the trial, and that he had never bought any pig iron, either on December 22, 1905,—the time charged in the indictment,—or, at any other time, from either of them. Shaffer testified he had never seen either Briody or Gallagher until the trial and that he had never bought any pig iron from either of them. The book-keeper of the firm, Miss Anna Sandlers, testified that she was working for them in their office during 1905 and that the office window was so situated that she could see into the yard; that she was there during the day of December 22, 1905, and did not see either Briody or Gallagher, or anyone else, drive in with a load of pig iron on that day or any other day during that year. Several witnesses testified as to the previous good reputation of both plaintiffs in error, and no attempt was made by the State to show the contrary.

Plaintiffs in error contend that there is a variance between the indictment and the proof; that, even admitting the testimony of Briody and Gallagher to be true, it shows that the plaintiffs in error were guilty of larceny and not of receiving stolen property. Under sections 239 and 241 of the Criminal Code the offense of receiving or buying stolen property, or aiding or concealing the same, for gain, or to prevent the owner from re-possessing himself thereof, with knowledge that it has been stolen, is made a substantive crime and subject to punishment, without reference to the trial or conviction of the person committing the larceny. (*Huggins* v. *People,* 135 Ill. 243.) The argument is made that the proof shows, if it proves anything, that Feinberg and Shaffer planned the taking of the property before its

conversion, and that therefore, if the State's testimony were true, they were guilty of larceny as principals, or at least as accessories before the fact, and were not guilty of the offense of receiving stolen property; that the principal can not be held as receiver, as one cannot be guilty of receiving stolen goods from himself. (2 Bishop on New Crim. Law, sec. 1140.) The evidence is not entirely clear regarding the load alleged to have been sold on December 22, 1905, as to whether there was any previous talk that day before the load was drawn into the yard. Gallagher says that Feinberg and Shaffer suggested some days before that a whole load be sold, and that he then said it was too risky. Briody testified that they went in and talked first with the plaintiffs in error and then drove in with one of the loads afterwards. We think it may be fairly said from this record that Gallagher and Briody were the only ones that were guilty of larceny of the load in question, and that the conversion took place when they started to drive out of their direct route into the alley·and towards the premises of the plaintiffs in error. Be that as it may, we think the correct rule is laid down in Wharton on Criminal Law, (vol. 1, 9th ed. sec. 986,) that when, on indictment for receiving stolen property, the proof shows that the defendant was also an accessory before the fact but was not present at the actual time of the conversion of the goods, in such case the defendant can be held for receiving stolen property, the offense of larceny being so distinct from that of receiving stolen goods that one cannot be held to merge in the other nor the defendant's conviction of one be incompatible with conviction in another. (*State* v. *Coppenburg,* 24 S. C. (2 Strob.) 273; 25 Cyc. 59.) On this record we do not think there is any variance between the indictment and the proof.

The plaintiffs in error also insist that the only evidence against them was that of self-confessed accomplices, and that therefore it was not sufficient to justify a conviction.

2 3 7— 2 3

While it has been held in some jurisdictions that the uncor-roborated testimony of accomplices could not sustain a con-viction, (1 Wharton on Crim. Law,—9th ed.—sec. 982*a*,) still in this State a contrary rule has been laid down. (*Friedberg* v. *People,* 102 Ill. 160.) The authorities, how-ever, agree that such evidence is liable to grave suspicion and should be acted upon with the utmost caution. (*Hoyt* v. *People,* 140 Ill. 588.) Whether the evidence is sufficient to sustain a conviction is largely a question for a jury, and it is only when the court is satisfied, from a careful consideration of the whole testimony, that it is not suf-ficient to sustain the guilt of the accused, that it will inter-fere with the verdict of a jury on that ground. (*McCoy* v. *People,* 175 Ill. 224; *Miller* v. *People,* 229 id. 376.) We are not prepared to say that this record would justify the court in setting aside the verdict on the ground of a lack of evidence to support it, but we think it is so conflicting on material points that the instructions should have stated the law applicable to the facts with accuracy. *People* v. *McGinnis,* 234 Ill. 68; *Adams* v. *People,* 179 id. 633; *Mil-ler* v. *People, supra.*

Plaintiffs in error insist that instruction 3 given for the People was erroneous. The instruction reads:

"As to what constitutes knowledge on the part of the defendants in this case, the court instructs the jury, as a matter of law, that to prove a person guilty of receiving stolen property or aiding in concealing stolen property from its rightful owner, knowing the same to have been stolen, it is not necessary to the conviction of the defendant that the People should show that the defendant saw the goods stolen or was told that they were stolen. If it appears from the evidence, beyond a reasonable doubt, that the circum-stances present and manifest to the defendant *at the time of the acceptance of the goods in question* were such as would have induced him or any man of ordinary observa-tion to believe, and that he did believe and know, that

the property was stolen and was being offered to him, or
those acting in concert with him, by one who had no right·
so to do, such evidence is sufficient.   For necessary ele-
ments in proving guilt other than knowledge your attention
is directed to other instructions."

The italics are ours.   It is insisted that by these itali-
cized words the court assumed that defendants had received
the stolen property in question.   This was undoubtedly a
vital point in the case and sharply controverted.   No stolen
property was ever found in the possession of plaintiffs in
error, and the only testimony to that effect other than that
of Briody and Gallagher, who confessed that they stole iron
from their employer, and who, as the record shows, had not
been indicted for their offense at the time of the trial, was
by Novatny that Feinberg told him he wanted to sell him
some pig iron in November, 1906, and the further fact, if
it can be held to be any evidence of crime on the part of
plaintiffs in error at all, that Feinberg admitted that Briody
drove into his yard with a load of pig iron in November,
1906, which he refused to buy.   As to plaintiff in error
Shaffer there were absolutely no facts corroborating the
confessions of Briody and Gallagher.

Counsel for defendant in error insist that instructions
in the identical language of this one were approved by this
court in *Lipsey* v. *People,* 227 Ill. 364, and in *Delahoyde* v.
*People,* 212 id. 554.   The instructions in those cases are
not set out in the opinions, and there is nothing therein
to indicate that the instructions were identical in language
with the one here; but assuming, for the sake of the argu-.
ment, that they were, the proof shows clearly and without
controversy in each of those cases that the person charged
with receiving stolen property did actually have the stolen
property in his possession, so that, as was said in *Delahoyde*
v. *People, supra,* (p. 565,) while the criticism of the in-
struction that it assumed that plaintiff in error had received
the goods in question was well founded, yet "under the

proof it could do no harm to plaintiff in error, for the reception of the goods by him, in our judgment, was abundantly proven, and, we think, practically conceded by plaintiff in error." Substantially the same condition of facts existed in the *Lipsey case, supra.* But in this case the situation is entirely different. Here were two plaintiffs in error, who had previously borne good reputations, who flatly denied that they ever received any of the stolen property in question, and were corroborated in some degree by their book-keeper, and the only direct testimony against them was that of those who confessed that they had stolen the property from their employers,—testimony of a nature which must be received by the jury with great caution. Where facts are controverted and the evidence is conflicting, it has been frequently held by this court that it is error for the trial court, in instructing the jury, to assume that certain facts are true. (*Miller* v. *People, supra; Foglia* v. *People,* 229 Ill. 286.) In view of the conflicting nature of the testimony on this vital question we do not think the rule that the instructions should be taken as a series, or the insertion of the last sentence in this instruction, neutralized the harm that may have been done by the italicized sentence, which clearly assumed that the goods in question had been accepted by the plaintiffs in error. The giving of this instruction was reversible error.

We cannot agree with the contention of plaintiffs in error that the admission of Novatny's testimony was erroneous. That evidence tended to contradict Feinberg as to his statement that he had never had any pig iron in his possession. The jury should have every fact before them which may enable them to come to a satisfactory conclusion, and much discretion is allowed the trial court in the admission or exclusion of evidence. 3 Ency. of Evidence, 110, 116; *Miller* v. *People, supra.*

Plaintiffs in error also complain of certain statements made by counsel during the trial and in the closing argu-

ment.    We do not think there is any prejudicial error in this regard.    Neither do we consider that there is any basis for the contention that the court made improper remarks during the trial.

For the error committed in giving the third instruction, set out above, the judgment is reversed and the cause remanded to the criminal court.    *Reversed and remanded.*