(No. 22703.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK LIPIANO, Plaintiff in Error.

*Opinion filed December 19, 1934.*

EMMET F. BYRNE, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Mike Salambino and Joe Page, was indicted in the criminal court of Cook county under a charge of burglary and receiving stolen property. Salam-

bino and Page were not apprehended. The case as to plaintiff in error was tried before the court, a jury having been waived, and at the close of the People's case the State's attorney *nolle prossed* the burglary charge and the court found plaintiff in error guilty of receiving stolen property, consisting of olive oil, cottonseed oil, soap, and like articles, of the value of $154, the property of one Joseph Seff. Plaintiff in error brings the cause here for review.

Plaintiff in error raises here but one issue—*i. e.,* whether the evidence sustains the finding of guilty. He contends there is not sufficient proof that he had knowledge that the goods received by him were stolen. Proof of the burglary and loss of goods was made by the complaining witness, Seff. A boy named Tony Cimino testified on behalf of the People that he, with Salambino and Page, burglarized Seff's store on the night of January 24, 1934; that he did not know plaintiff in error and had never seen him prior to that date; that Page and Salambino showed him the premises at 620 Laflin street, in the city of Chicago, where plaintiff in error at that time lived, and that this was the place where the load of goods was to be taken. He also testified that he afterwards went with the officers to the garage in the back of the house at 620 Laflin street, where a truck loaded with the goods was found. Police officer John Blazek corroborated this witness as to finding the truck loaded with canned goods, olive oil, etc., in a garage at 620 Laflin street. He testified that he later, with the consent of the owner of the premises, broke into the garage and took the truck to the police station, where Seff identified the property taken.

Police officer Thomas J. Torpy testified that he arrested plaintiff in error on January 26 and asked him where his truck was; that the latter replied he did not know—that the last time he saw it was about 12:00 or 1:00 o'clock A. M. on January 24. He testified that plaintiff in error told him that at that time two fellows, Joe and Mike, wanted to

borrow his truck to do a moving job the next morning, and that he finally consented to their use of the truck and gave them the keys. He also testified that plaintiff in error said that about 3:00 or 4:00 o'clock that morning the boys returned and brought up several cans and boxes and placed them on the porch, saying, "This is for you, Frank," and plaintiff in error stated that he replied to them, "I don't want any of that kind of stuff," and that the boys told him they were going to get rid of the stuff the next day, for they had a buyer for it, and that they left it on the porch and plaintiff in error returned to bed. Officer John Touhy testified that he was present with officer Torpy when plaintiff in error was arrested; that they went to his house and found on a shelf in the clothes closet in the front bed-room five cans of the olive and salad oils and in the hallway of plaintiff in error's apartment they found a carton of the soap.

Plaintiff in error testified that Joe Page, one of the young men who came to his house, is a friend of his; that Page asked to use his truck, telling him that he wanted to make a couple of dollars and that he would pay $5.00 for use of the truck; that he did not at first consent; that he told Page he had to go to Pontiac the next day, and finally gave him the keys to the truck and garage; that a couple of hours later Page returned and told him that he would not have use for the truck; that he put the stuff in the garage; that he got a couple of cases of stuff and asked plaintiff in error to keep it; that plaintiff in error said, "I don't want it—take it back," but Joe said, "Leave it stay and early in the morning I take them out." Plaintiff in error also testified that at the time he let Page have the truck he did not know he was going to use it to steal or carry away stolen goods and that he did not know this property was stolen. He also testified he did not know that any of the stolen merchandise was in his house and did not give permission to anyone to take it. On cross-

examination he testified he did not want to give the truck keys to the boys right away and that he felt something would happen. Rose Codulo, Mary Maioni and Julia Piemonte corroborated plaintiff in error in his statement that he and they left in his automobile for a visit to Pontiac, Illinois, on the morning of January 25, returning about 5:30 the same day.

It is argued by counsel for plaintiff in error that there is not sufficient evidence of guilty knowledge on his part, and that want of guilty knowledge on his part is shown by his statement to Page and Salambino when they placed part of the stolen property on his porch, "I don't want it—take it away." It may be argued with equal force that this tends to establish knowledge that the property was stolen at the time it was left there. Bearing on the issue of guilty knowledge are the further facts that Page asked for his truck at 1:00 o'clock in the morning and some of the stolen goods were found in the closet of the bed-room and in the hallway of plaintiff in error's home. The facts that he loaned the truck to one who, so far as the record shows, was not engaged in the moving business, and that plaintiff in error loaned the truck to him without further explanation than that he wanted to move some stuff in the morning, also tend to show that plaintiff in error knew that the property brought in his truck and received by him was stolen property.

Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that property had been stolen and the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was received. *People* v. *Grove,* 284 Ill. 429.

In the trial of a criminal case without a jury, the question of the weight of the evidence is primarily for the trial judge, who hears and sees the witnesses and is therefore in much better position than the reviewing court to deter-

mine the weight of their testimony.  *People* v. *Sciales*, 353 Ill. 169.

This court is unable to say that the evidence does not sustain the finding of guilty.  The judgment of the criminal court is therefore affirmed.  *Judgment affirmed.*