(No. 29398.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES THOMAS, Plaintiff in Error.

*Opinion filed May 21, 1946.*

EDWARD PREE, and JOSEPH A. LONDRIGAN, both of Springfield, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and JOHN W. CURREN, State's Attorney, of Springfield, (FRANK PFEIFER, of Springfield, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Defendant, Charles Thomas, was indicted, tried and convicted in the circuit court of Sangamon county for the crime of receiving stolen property, knowing it to have been stolen. The indictment contained three counts, the first of which charged defendant with receiving seven cases of Philip Morris cigarets of the value of $514.84, the property of Henry A. Gardner, trustee of the Alton Railroad Company, an Illinois corporation; the second charged the receiving of the same property as the first, the property of the Alton Railroad Company; and the third, that the property received was the property of Adeeb Najim and Elias Najim. The jury found defendant guilty as charged in the indictment, and found the value of the property received to be $525.

Written motions for a new trial and in arrest of judgment were overruled. The record does not disclose that defendant filed a written motion asking that he be released on probation, but in a judgment entered September 25, 1945, committing defendant to the penitentiary, there was included an order denying defendant's motion to be released on probation. On October 10, defendant filed a written motion to vacate the judgment of September 25, including the order denying probation, and asked that defendant's application for probation be referred to the probation officer for investigation and report. The motion was allowed, the probation matter was referred to the probation officer, and October 25, he filed his report. On

the same day probation was denied and defendant was committed to the penitentiary for one to ten years, with a minimum of two and maximum of five years.

Many errors are assigned as grounds for reversal. In general they are (a) defendant was not proved guilty beyond a reasonable doubt; (b) error in giving and refusing instructions; (c) error in rulings on evidence, and (d) that there was error in denying probation.

Early in the evening of April 25, 1945, a special agent of the Alton Railroad found that the freight house used jointly by said company and the Baltimore & Ohio Railroad Company, located in Springfield, had been broken into and certain articles removed therefrom. On the trial, Thomas Patrick LaBarbara testified that on said date, and prior thereto, he had been employed by a chemical company in Springfield; that after working hours on said date he returned to the yards of his employer and drove away one of the employer's trucks; that he went to the freight house of the Alton Railroad Company and parked the truck nearby. That a little later, the same evening, he entered the freight house by lifting a latch on an outer door and when inside forced the lock to an inner door thereby gaining access to an inner room and removed seven cartons therefrom; that he placed them in the truck and, to protect them against rain, covered the articles with a tarpaulin. He drove from the freight house to defendant's tavern on Madison street in said city, that he parked the truck in the street in front of the tavern and upon entering the tavern saw defendant and had a conversation with him. He stated that immediately thereafter he met defendant outside the tavern near the truck, that defendant drove his automobile near the rear of the truck and the two of them removed the seven cartons from the truck to the automobile. He testified that a few days thereafter he returned to the tavern and defendant gave him $100.

Defendant denied seeing LaBarbara on the night of April 25, denied that he received any cartons from him at that or any other time, or that he paid him any money. However, there is corroboration of LaBarbara's testimony that he was at the tavern with the chemical company truck on the night in question. A police officer of the city testified that about 8:25 that evening, when he was driving along the street in front of the tavern, he saw a truck with the chemical company's name on it parked in front. He further testified that he saw defendant's car standing directly behind the truck, and that defendant was standing nearby. He described the wearing apparel of the man in the truck and the description given corresponds with that which LaBarbara said he was wearing that night.

It does not appear that the cartons were opened by LaBarbara and no other witness testified to having seen the contents. Defendant argues there is no proof that the cartons contained Philip Morris cigarets. LeBarbara testified that prior to that time he had handled cartons containing cigarets, and that he knew the cartons he took from the warehouse contained cigarets. But the evidence as to ownership of the cartons is insufficient to show beyond a reasonable doubt that defendant received property which had been stolen from some one of the persons or corporations named in some count of the indictment. The ownership of the property alleged to have been received by defendant was an essential element of the crime charged and it was incumbent upon the People to prove it beyond a reasonable doubt. (*People* v. *Nakutin,* 364 Ill. 563; *People* v. *Struble,* 275 Ill. 162; *Aldrich* v. *People,* 225 Ill. 610.) The proof of corporate existence of the railroad company need not, however, be shown by the charter or the articles of incorporation. Proof of user is *prima facie* evidence of the existence of a corporation. Ill. Rev. Stat. 1945, chap. 38, par. 737; *People* v. *Pernalsky,* 334 Ill. 38.

No proof was offered under the third count. There was some evidence showing the Alton Railroad used the freight house from which the cartons were taken; that it was engaged in the transportation of freight, and that it was operated by a trustee, but the evidence does not show beyond a reasonable doubt that the cartons taken by La-Barbara from the freight house were the property of the Alton Railroad Company or the trustee in charge.

C. D. Winkler testified that he was in the employ of the Alton Railroad as a special agent; that about 10:30 on the evening of April 25, he found that a door to the warehouse had been opened. He described the interior of the building and stated that there was a room in the freight house where cigarets, liquors and other small articles were kept. He testified that he found the lock on the inner door had been torn loose and that on checking waybills there were seven cartons missing.

Elmer Powell testified he was the freight agent in the joint employ of the Alton Railroad and the Baltimore & Ohio Railroad Company; that they were two separate and distinct entities and that each was a corporation. He further testified that the freight house was used by the two companies jointly. There was no attempt to prove that any part of the warehouse or the interior room was used exclusively by the Alton company. To establish that the cartons taken from the freight house were the property of the Alton Railroad Company or the trustee, the People introduced in evidence a waybill issued by the Alton Railroad for the shipment of seven cases of Philip Morris cigarets to a consignee in Springfield. The waybill was identified by the witness Powell, and he testified on direct examination that the usual and customary procedure followed in handling incoming merchandise was for a freight checker to check it into the freight house. In answer to a general question propounded on direct examination he stated that such procedure had been followed in this case

and he fixed April 25 as the date of the arrival of the shipment in Springfield. However, his cross-examination disclosed his testimony as to receipt of the goods at the freight house was based on the usual practice rather than an intimate knowledge of the transaction or identification of records of the company that would show such fact. He testified the freight checker, Mr. Archer, would be the only one who would have information on that matter. Archer was not called as a witness nor did the People produce any records other than the waybill to show receipt of the merchandise at the freight house. No one has pointed out anything on the waybill which indicates that the shipment of seven cartons of Philip Morris cigarets was taken into the freight house or that the seven cartons described in the waybill were the ones taken by LaBarbara.

The undisputed fact is that the Baltimore & Ohio Railroad Company used the freight house jointly with the Alton Railroad, and since there was no proof to show the cartons described in the waybill were taken into the freight house, we have the uncertainty as to which of the railroad companies owned the cartons.

Defendant testified he had a conversation with LaBarbara a year previous. When he undertook to relate the substance of such conversation the court sustained an objection thereto. It is contended such conversation should have been admitted for the purpose of showing hostility of the witness LaBarbara to the defendant. It does not appear that the evidence was offered for that purpose and, further, there is no foundation laid for the admission of such testimony. It does not appear in what way the previous conversation would be material or relevant.

Error is assigned on the giving of the ninth and tenth instructions. The ninth instruction told the jury that one of the defenses relied upon was that of an alibi, and concluded with the direction that before such defense would be sufficient to authorize an acquittal, it must appear that

at the time of the commission of the crime the defendant was at another place so far away, under such circumstances, that he could not, with ordinary exertion, have reached the place where the crime was committed so as to have participated therein. The tenth instruction told the jury that, where the defense of an alibi is relied upon, in order to maintain it, it is incumbent upon defendant to support it by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant.

Defendant testified that on April 25 he was in his tavern from 7 o'clock in the morning until midnight, that after dark, when it began to rain, he went out to raise the windows of his car, and that was the only time he was out of the tavern during the hours stated. He denied seeing LaBarbara or having any transaction with him.

The defense of an alibi does not, in theory, deny that the crime was committed, but is designed to prove that the defendant during the whole time was so far from the place where the crime was committed that he could not have participated in it. (*People* v. *Lukoszus,* 242 Ill. 101.) That was not the character of defense defendant interposed. It was a denial of having seen LaBarbara or having received cartons from him. The designation of such defense as an alibi, by instruction, had the effect of telling the jury to weigh defendant's evidence by a rule of law not applicable to the case. The giving of such instructions was prejudicial to defendant. *People* v. *Arthur,* 314 Ill. 296.

Complaint is made of the giving of instructions Nos. 3, 5 and 12 on behalf of the People. These instructions attempted to define reasonable doubt. They are the same as have been condemned by this court in many cases, some of which are *People* v. *Casey,* 350 Ill. 522; *People* v. *Schuele,* 326 Ill. 366; *People* v. *Rogers,* 324 Ill. 224. In-

structions ought to be correct, and after the defects of general instructions, such as these, have been pointed out they should not be given even though it may not have been considered ground for reversing the judgment in a particular case.

Complaint is made of the giving of instructions Nos. 13 and 17. No. 13 states the law as to circumstantial evidence and instruction No. 17 advised the jury that defendant's knowledge of the theft need not be the actual or positive knowledge which one acquires from personal observation of a fact but that it was sufficient if the circumstances accompanying the transaction be such as to cause a reasonable person to believe the goods had been stolen. Under the authority of *People* v. *Lipiano,* 358 Ill. 475; *People* v. *Grove,* 284 Ill. 429, and *Delahoyde* v. *People,* 212 Ill. 554, both instructions contained correct statements of the law and were applicable to the facts.

Instruction No. 36 offered on behalf of defendant was properly refused. It told the jury that the evidence of a former conviction of the witness LaBarbara was competent to show his bad moral character and that the jury should act upon such testimony with great care, caution and suspicion. The record of an infamous crime is offered against the testimony of a witness who has been convicted of such crime for the sole purpose of affecting the credibility of the witness, and the jury is allowed to take into consideration the fact of such conviction in passing upon his testimony. The record of such a prior conviction is proof of a fact which the jury may take into consideration along with the other evidence in the case in passing on the credibility of the witness. *People* v. *Parks,* 321 Ill. 143.

The trial court properly refused instruction No. 46 offered for the defendant. This instruction singled out the testimony of Thomas LaBarbara. It referred to him as an accomplice and told the jury it could not pass upon his evidence as it did the testimony of other wit-

582

nesses, that it is depreciated by law, and the jury should look upon it with suspicion and should not convict on it, alone, unless convinced of its truth. It ignored the fact that LaBarbara's testimony as to the transaction that occurred at the tavern was corroborated by the police officers.

The law is that where the principal evidence is that of an accomplice, unless it is so corroborated by other testimony or circumstances as to prove guilt beyond a reasonable doubt, it is, as a matter of credibility, subject to suspicion and should be acted upon with great caution. *People* v. *Lewis,* 313 Ill. 312; *People* v. *Rosenberg,* 267 Ill. 202; *People* v. *Feinberg,* 237 Ill. 348.

In view of the conclusion that it is necessary to reverse this judgment for a new trial, it will not be necessary to consider the error assigned on the court's refusal of probation.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*