(No. 31233.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE PISZCZEK, Plaintiff in Error.

*Opinion filed November 22, 1949—Rehearing denied Jan. 12, 1950.*

Frank A. McDonnell, of Chicago, (William L. Carlin, and Louis A. Rosenthal, of counsel,) for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, and John L. Henrick, all of Chicago, of counsel,) for the People.

Mr. Chief Justice Thompson delivered the opinion of the court:

The defendant, George Piszczek, also known as George Poszczek, together with Charles Stockton, Albert Neiditch, Robert Pasche and George B. Ogden, were indicted in the criminal court of Cook County for the crimes of burglary and receiving stolen property. Defendant pleaded not guilty and waived a trial by jury. He was found guilty of receiving stolen property and sentenced to imprisonment in the penitentiary for a term of from one year to ten years. Piszczek prosecutes this writ of error.

The four codefendants named were tried jointly with Piszczek. The evidence discloses that, on November 4, 1948, the house of Ture Peterson in the village of Oak Park was burglarized. A typewriter and an adding machine, among other articles of personal property belonging to Peterson, were stolen. Stockton, Neiditch, Pasche and Ogden admitted that they committed the burglary. A 1941 Buick automobile stolen by two of the codefendants was used by them and the other two codefendants during the evening the burglary was committed. Ogden and Pasche testified that Piszczek was not with them and the other two defendants when the burglary took place. Stockton testified that Piszczek had nothing to do with the burglary

itself. Piszczek stated that he did not ride with his co-defendants in an automobile on November 4. The testimony of two police officers corroborates the denials of Piszczek's participation in the burglary and theft.

Piszczek became acquainted with the codefendants in a tavern on North Clark Street, in Chicago, three or four days prior to November 4, 1948. The day following the burglary, Piszczek's four codefendants contacted him in an attempt to dispose of the typewriter and adding machine. These two articles were in the stolen automobile, parked on Ontario Street, between Clark and Dearborn streets. Piszczek saw them on the floor or the rear seat of the car before seeking a prospective purchaser. While he was so engaged, the articles disappeared from the automobile.

Ogden, who saw Piszczek on Clark Street the morning after the burglary, testified that he, Stockton, Pasche and Neiditch attempted to dispose of the property stolen, saying, "We handed over the typewriter and adding machine the next day. The way it was, it was left in the car, and we told George Poszczek where it was. We showed him the car, showed him the stuff, and he said he would get rid of it for us." According to Ogden, Piszczek paid five dollars on account, saying that the man who was buying the typewriter and adding machine would burn the numbers off first; that he could not take them unless they were burned off, "because he couldn't handle the stuff," and that fifty-five dollars additional would be paid later. Ogden stated that he did not mention to Piszczek the articles were stolen. Pasche testified, "We got five dollars off of Poszczek, and that is all." He added that the only time Piszczek was in the stolen car was when he was looking for a place to sell the typewriter and adding machine. Stockton testified that, after the burglary, he gave the bulk of the stolen property to Piszczek to dispose of and that he received five dollars from the latter. On cross-examination, Stockton added that when Piszczek said he could dispose of the articles

stolen he, Stockton, took him by the car; that Piszczek said to leave the items in the car and he would meet the four men later at a named tavern, and would bring the money received from the sale. Stockton stated that Piszczek appeared later and gave him five dollars, saying he could only make a partial payment because the purchaser had to burn the numbers off before the sale could be consummated. Stockton testified, further, that he believed Piszczek knew the typewriter and adding machine were stolen and, also, that he believed he told him of the theft, saying that they had a conversation about the sale after the burglary. An assistant State's Attorney who talked with the five defendants on November 12, testified that Piszczek, in the presence of his codefendants and four police officers, made a statement that he gave five dollars to Stockton either the same day or a few days later because he was afraid of incurring the wrath or anger of his companions for having allowed the typewriter and adding machine to disappear.

Piszczek testified that, although the typewriter and adding machine were turned over to him for sale, he never had actual physical possession of the two articles and that, in particular, he did not have them in his home. According to defendant, they were left in the automobile. He denied having a conversation with Stockton relative to where the articles were obtained and denied knowing that they were stolen. Piszczek testified that he offered the typewriter and adding machine for sale to a friend on Clark Street; that he did not make delivery to his friend, who is referred to only by the name of Johnny; that he borrowed the five dollars he gave to Stockton from Johnny; that he did not receive this money in payment of the articles which he offered for sale; that he first discovered they were missing when he brought the purchaser back to the car to show them to him, and that he never saw the purchaser afterwards. He stated that he never knew Stockton was not the owner of the articles. On cross-

examination, Piszczek testified that Stockton did not tell him where he obtained the typewriter and adding machine, "I didn't ask questions," and that he merely glanced at them through the car window and did not know their condition. He denied telling Stockton that he could not sell the property until the numbers were burned off, stating that he merely told him, "Here is five dollars, I will see if the fellow can get the rest of the money now."

Defendant advances several contentions to obtain a reversal. He asserts that the court found him guilty of both burglary and receiving stolen property and that these findings are legally inconsistent. This contention is predicated upon an oral statement of the trial judge at the close of all the evidence that he was finding each of the five defendants guilty of burglary. Defendant's attorney pointed out that the evidence disclosed Piszczek had nothing to do with the burglary itself. The trial judge replied that possession of stolen property from a recent hold-up, burglary or otherwise, without adequate explanation, renders one guilty as an accessory after or before the fact. Although the trial judge stated, in the first instance, that he was finding defendant guilty of burglary, he did not pursue the oral finding with a written finding of guilty on this charge. The subsequent written finding of guilty of receiving stolen property having a value of one hundred dollars and knowing it to have been stolen was followed by the entry of judgment on this finding. Since it cannot be said that defendant was found guilty of both burglary and as a receiver of stolen property, his contention that legally inconsistent findings were made is without merit.

Piszczek maintains that he was not proved guilty beyond a reasonable doubt of the crimes charged and, further, with respect to the charge of receiving stolen property, that the People failed to prove either *scienter* or possession by him of the stolen property beyond a reasonable doubt. Since defendant was not convicted of burglary, his contention,

to the extent it relates to the burglary charge, does not require further consideration.

To sustain a conviction of receiving stolen property, the proof must show (1) that the property has, in fact, been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it has actually received the property stolen or aided in concealing it; (3) that the receiver knew the property was stolen at the time he received it, and (4) that he received the property for his own gain or to prevent the owner from again possessing it. (*People* v. *Harris*, 394 Ill. 325; *People* v. *Grizzle*, 381 Ill. 278; *People* v. *Rubin*, 361 Ill. 311; *People* v. *Prall*, 314 Ill. 518; *People* v. *Ensor*, 310 Ill. 483.) To convict an accused of receiving stolen property, it is not necessary to show that he came into actual, manual possession of stolen property; constructive or potential possession is sufficient. (*People* v. *Poncher*, 358 Ill. 73; *People* v. *Jurek*, 357 Ill. 626.) To be guilty of·receiving stolen goods, the accused, if he does not have actual physical possession of the property, must have a measure of control or dominion over its custody. (*People* v. *Mulford*, 385 Ill. 48.) The element of guilty knowledge on the part of the receiver must be proved, beyond a reasonable doubt, to be present at the time the goods were received by him. (*People* v. *Rubin*, 361 Ill. 311; *People* v. *Prall*, 314 Ill. 518.) Although proof of actual or direct knowledge of the accused that the goods had been stolen when he received them is not required, facts and circumstances must be proved sufficient to create in the mind of the accused a belief that the goods were stolen. (*People* v. *Kohn*, 290 Ill. 410; *People* v. *Grove*, 284 Ill. 429; *People* v. *Schallman*, 273 Ill. 564.) Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen and by the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was

received. *People* v. *Thomas,* 393 Ill. 573; *People* v. *Racine,* 362 Ill. 602; *People* v. *Lipiano,* 358 Ill. 475.

Here, a typewriter and an adding machine were stolen by Piszczek's four codefendants. They told Piszczek that the property had been stolen. Although not engaged in the business of selling or trading in property of this character, —or any other kind of property—he agreed to dispose of the articles described, and one or more of his codefendants accompanied him to the stolen automobile, parked in a public street, where the stolen property was located. Defendant admitted knowing the automobile stolen had been used in burglaries and, further, that he had knowledge the codefendants were involved in burglaries, and, if not the burglary of Peterson's house, of burglaries generally; that he told them to leave the typewriter and adding machine in the car; that he would bring the proceeds of the sale to a tavern where he had first met them three or four days earlier; that he offered the property for sale to a man known to him only by the name of Johnny, and that he appeared at the tavern later the same day, gave the codefendants five dollars in part payment, stating he had received this amount from a purchaser and that the balance of fifty-five dollars would be forthcoming after the identifying numbers on the property were burned off. We are of the opinion that the evidence recounted affords abundant proof that defendant had knowledge the property was stolen, that he received the property, and that he prevented the owner from again possessing it. Construing the evidence most favorably to Piszczek, all that can be said is that he did not have the typewriter and adding machine in his manual physical possession. Assuredly, one may be the receiver of stolen property without literally having the property in his hands. For purposes of convenience, the typewriter and adding machine were left by Piszczek in the stolen automobile while he was endeavoring to find a purchaser. The sale to the purchaser was not completed

472

for the reason only that, when Piszczek repaired to the tavern to meet the codefendants, the property had disappeared or again been stolen, this time from those who stole the property from its original owner, Ture Peterson. Piszczek argues that it can hardly be said he received the property for his own gain. The evidence shows that he made a partially successful attempt to procure a purchaser for the property. The only reasonable inference is that he expected to make a profitable sale of the stolen property. The fact that his efforts in this regard were frustrated by the disappearance or a second theft of the property is immaterial, so far as proof of the crime of receiving stolen property is concerned.

The only other contention to be considered is that the trial judge failed to advise Piszczek of his right to have counsel at all times throughout the trial. When the court was disposing of the application for release on probation, it appeared that the attorney who had represented Piszczek throughout the trial had withdrawn from the case because he had not been paid for legal services previously rendered. The record does not show Piszczek was advised of his right to new counsel or that he requested a new attorney. Defendant concedes that the mere fact the court did not inform him of his right to counsel is not in and of itself a ground for reversal. His point is that failure to advise him of the right to counsel, coupled with other surrounding circumstances attending the fairness of the trial does, however, constitute reversible error. In the present case, defendant was tried by the court without a jury and he was competently represented by counsel upon the trial of the cause to and including the making of the motion for probation. When the application came on for hearing eighteen days later, the trial judge had the probation report before him. There was but little, if anything, that counsel could have accomplished at this stage of the proceedings. It may be observed that defendant's new counsel who presented

his written motions for a new trial and in arrest of judgment did not make complaint in either motion of the point now urged. Under the circumstances, we cannot say that defendant was denied any constitutional or statutory rights for the mere reason that the trial judge who had heard the cause without a jury did not appoint new counsel to represent him upon the hearing of the motion for release on probation and the sentencing. The applicable statute provides that when a person charged with crime shall state upon oath that he is unable to obtain counsel, the court shall assign him competent counsel. (Ill. Rev. Stat. 1949, chap. 38, par. 730.) The right to representation by counsel may be waived or claimed as a defendant himself elects, and no duty rests upon the court to provide legal assistance for an accused unless he states upon oath his inability to procure counsel. *People* v. *Braner*, 389 Ill. 190.

We have analyzed the record here and find no errors warranting a reversal. The judgment of the criminal court is, therefore, affirmed.

*Judgment affirmed.*