THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. HYMAN L. ROSENBERG, Plaintiff in Error.

*Opinion filed February 17, 1915.*

1. CRIMINAL LAW—*People must establish defendant's connection with the crime proved.* In a criminal case the People are not only required to prove the commission of a crime, but must also establish the defendant's connection with the crime beyond a reasonable doubt.

2. SAME—*testimony of an accomplice, although uncorroborated, may be sufficient to convict.* The testimony of an accomplice is legal and competent, and a conviction may be had on such testimony, though uncorroborated, if of such character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant.

3. SAME—*evidence of an accomplice must be acted upon with caution.* The evidence of an accomplice is liable to grave suspicion and should be acted upon with great caution, and only in case the jury are satisfied from it, together with all the circumstances in the case, that it is true.

4. SAME—*all facts and circumstances must be considered in determining credibility of accomplice.* In determining the credibility of an accomplice all the facts and circumstances must be taken into account.

5. SAME—*corroboration of an accomplice need not be direct.* Corroboration of the testimony of an accomplice need not be by direct evidence, but may consist of facts and circumstances connecting the defendant with the crime and which are inconsistent with his innocence.

6. SAME—*what tends to corroborate testimony of an accomplice.* On the trial of one charged with burning a building in which he was conducting a restaurant, where the only direct evidence connecting the defendant with the crime is the testimony of the man who set the fire, proof that the defendant was losing money and that after the fire he made a loss schedule for an insurance company which was not only largely in excess of the value of the articles destroyed but also included articles not in the building, tends to corroborate the testimony of the accomplice that the defendant employed him to set the fire.

7. SAME—*jury should be correctly advised as to the rules of law.* It is essential to the preservation of the system of trial by jury that the jury be correctly advised as to the rules of law governing them, and no error of the court in performing its duty in

that regard can be overlooked or disregarded unless it clearly appears that the error could not have affected the verdict.

8. SAME—*when an instruction as to the degree of doubt which will justify acquittal is erroneous.* An instruction stating that "a doubt upon which you may acquit the defendant must be a reasonable one,—not merely one of speculation or probability," etc., is erroneous in requiring the doubt to be more than a probability that the accused was not guilty, as a probability is that quality or state which presents an appearance of truth and requires more evidence for it than against it.

9. SAME—*instructions should be applied to facts in the case.* It is not error to refuse an instruction which is merely an abstract statement of a supposed rule of law which is not applied to the facts in the case.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. RICHARD TUTHILL, Judge, presiding.

LOUIS GREENBERG, WILLIAM B. BERGER, and B. SOLOMON MESEROW, (WILLARD McEWEN, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, GEORGE P. RAMSEY, and FRANK JOHNSTON, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment was returned into the criminal court of Cook county charging Hyman L. Rosenberg, the plaintiff in error, and Harry Brown, Joseph Clarke and John Danies with arson by burning the building of Joseph Matteson at 1304 West Madison street, Chicago, on December 20, 1909. Upon a trial it appeared that the defendant Joseph Clarke had no connection with the crime, and the court instructed the jury to find him not guilty. The defendants Harry Brown and John Danies testified on behalf of the People, and the State's attorney entered a *nolle pros.* as to them. The defendant Hyman L. Rosenberg was found guilty and was sentenced to the penitentiary.

It is assigned for error and contended in argument that the evidence was not sufficient to sustain the verdict. The building at 1304 West Madison street was 22½ feet wide, divided by a board partition through the middle, covered with wall paper. There had originally been a double door in front and the partition ran from the center of the door, so as to make a single door on each side. The building fronted south on Madison street and the west room was occupied as a jewelry store by a man named Janover. The defendant Rosenberg occupied the east room as a restaurant, with a cigar case, lunch counter, tables, stools and chairs. The door to the alley in the rear was in the east room, and there was a door through the board partition, which was used by Janover for access to the alley. The defendant Rosenberg had been conducting a losing business and he had discharged the cook and the cook's wife and closed the restaurant several days before the fire, which occurred at six or seven o'clock in the evening of December 20, 1909. The fire was an incendiary one, started at the same time in the two rooms by the explosive ignition of something like gasoline, and it burned with a thick, black smoke, which could not have come from anything in the rooms. It burned on both sides of the partition in such a way that it could not have commenced on one side and burned through to the other, and the partition was not burned through.

The direct evidence offered by the prosecution to prove the connection of the defendant Rosenberg with the crime consisted of the testimony of John Danies. Harry Brown had been engaged in the business of a fire insurance adjuster, and he testified that he told John Danies, who was engaged in the business of setting fires, that he knew a man named Janover who had a jewelry store at 1304 West Madison street and told Danies to go over there on business to make a fire. Danies testified that he was advised by Harry Brown to go to Janover's place, and he went

there and met Janover and told him that Harry Brown said
Janover wanted a fire; that Janover said he had a friend
right alongside with a restaurant who wanted a fire, and he
wanted them to go together, so as to get it cheaper; that
Rosenberg came in and wanted a fire right away, because
his business was poor and he could not exist any longer;
that Janover, in the jewelry store, wanted to do business
until Christmas and sell all that he could before the fire;
that the witness wanted to accommodate both parties and
waited until about four or five days before Christmas; that
Rosenberg agreed to pay $100 for his fire and gave the wit-
ness a note for that amount and Janover gave him a note
for $150; that in the meantime, after the agreement and
before the fire, the witness brought gasoline, which he had
bought at different paint stores, and put fifteen gallons in
cans in each room and they covered up the cans in Rosen-
berg's place; that Rosenberg was not to be present at the
time of the fire; that on the evening of the day of the
fire the witness emptied the gasoline out of the cans into
vessels or pails and carried the cans out into the alley and
put them in the ash boxes; that he then poured the gaso-
line on the floor in the two rooms, ignited both places at
once and got out of the rear of Rosenberg's room; that
there was not over $50 worth of property in the Rosenberg
place, and that after the fire he gave Rosenberg's note to
Julius Zar, who was in the habit of collecting such notes
for him on commission, but Zar told him that there was
a mortgage on the Rosenberg place, and he never got any-
thing from Rosenberg and the note was destroyed.

There was other evidence relating to the transaction, as
follows: The defendant Rosenberg had been in business
on Twelfth street, where he had, in addition to the prop-
erty in the restaurant, three pool tables, which he had sold.
The property on Twelfth street was insured for $900, and
the policy was transferred, on his removal from Twelfth
street, to the place on Madison street, and he had been

on Madison street less than a month and a half, where, as above stated, the business had proved a failure. After the fire Janover brought an insurance man in the employ of Joseph Clarke to Rosenberg and a schedule of property destroyed was made up, amounting to $975.40. The insurance company made an investigation and checked up the inventory and valued the property at $288 and settled at $300,—a result of a compromise with the adjuster for Rosenberg.

The defendant Rosenberg denied any connection with the fire or any knowledge of it until after it had occurred, or any acquaintance with Danies, and testified that he was taken home to his sister's house from the restaurant about December 17, 1909, sick, and was there until some time after the fire; that his business was very poor and he had closed the restaurant; that he saw Janover the day after the fire but had not seen him in six months before the trial, and that he settled his loss as a compromise. William Anixter testified that he came into the restaurant in December and Rosenberg told him that he was sick and the witness took him home. Robert Dan testified that Rosenberg was living at his house at the time of the fire and had been brought home sick by some of his friends about December 16 or 17 and was there when informed that his place had been destroyed by fire. Two witnesses testified that the reputation of Rosenberg was good. Julius Zar was beyond the jurisdiction at the time of the trial, and counsel say that Janover was a fugitive from justice.

The People were not only required to prove the commission of the crime, which was conclusively proved, but were also required to establish the connection of the accused with it, beyond a reasonable doubt. The direct evidence connecting Rosenberg with the crime was that of an accomplice, and the law is that the testimony of an accomplice is legal and competent, and a conviction may be had on such testimony, although uncorroborated, if it is of such a

character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant. (*Gray* v. *People,* 26 Ill. 344; *Cross* v. *People,* 47 id. 152; *Kelly* v. *People,* 192 id. 119.) The evidence of an accomplice is liable, however, to grave suspicion and should be acted upon with great caution, and only when the jury are satisfied from it, together with all the circumstances in evidence in the case, that it is true. (*Hoyt* v. *People,* 140 Ill. 588; *Campbell* v. *People,* 159 id. 9; *People* v. *Feinberg,* 237 id. 348.) An accomplice may testify with a worthy or an unworthy purpose. He may be prompted by remorse, or to uphold the law, or for the purpose of fixing a crime upon another for which he himself is alone responsible, and whatever the motive, his testimony may be so connected with circumstances and facts proved by other evidence as to satisfy the jury, beyond a reasonable doubt, of its truth. All the facts and circumstances must be taken into account in determining the credibility of the accomplice. In this case John Danies was a self-confessed criminal, hiring himself out to commit the crime of arson, where he had no interest except to obtain payment from persons interested in having the crime committed. He had no interest in the property of either Janover or Rosenberg and no interest in the insurance, nor hostility to either of them or to the owner of the building. It does not appear that there was any other evidence or fact or circumstance except his own testimony by which he could have been convicted of the crime, and, on the other hand, at the time of the trial he was being kept at a hotel in Chicago at the expense of Cook county and was promised immunity for testifying truthfully to any crime with which he had been connected. The defendant Rosenberg was engaged in a losing business and had insurance very greatly in excess of the property destroyed, and he participated in making a schedule so far in excess of the amount of the loss as to show that it could not have been honestly made. It is not unusual or evidence of a crime that exces-

sive values are put by the owners upon property destroyed by fire, but it is evident that the schedule made from information furnished by the defendant included property not in the restaurant, and that cannot be regarded as usual. The corroboration of an accomplice need not be direct but may consist of facts and circumstances connecting the accused with the crime. They must be inconsistent with the innocence of the accused, but every fact and circumstance proved by the People was consistent with and tended to corroborate the testimony of Danies. Upon the application to the evidence of correct rules as to what will constitute a reasonable doubt, we cannot say that the evidence was not sufficient to sustain the verdict.

It is the proper function of the jury to pass upon the credibility of witnesses and determine the facts and then apply the law as given them by the court and return a verdict accordingly. It is essential to the operation and preservation of that system that the jury should be correctly advised as to the rules of law governing them, and no error of the court in performing its duty can be overlooked or disregarded unless it clearly appears that the error could not have affected the verdict. Any other rule would be destructive of the system of trial by jury. The court, in advising the jury what sort of a doubt would justify the acquittal of the defendant Rosenberg, gave the following instruction:

"The jury are instructed that a doubt upon which you may acquit the defendant must be a reasonable one,—not merely one of speculation or probability. The State is not required to prove the defendant's guilt beyond all doubt. It is sufficient if the proof of guilt is beyond a reasonable doubt, and if the proof in this case convinces you, beyond a reasonable doubt, that the defendant is guilty, then you should find him guilty, even though you may believe that there is a possibility that he is innocent."

This instruction set up as a standard of a reasonable doubt that it must not create a mere probability that the accused is not guilty. That which is probable is that which has more evidence for than against it, which inclines the mind to believe a fact although it leaves some room for doubt. Probability is that quality or state which presents an appearance of truth, and the instruction told the jury that when the testimony was weighed by them it would not suffice for an acquittal that it appeared probable the accused was not guilty. The instruction given to the jury was taken by them as a guide for their deliberation and was not the law. (*Smith* v. *State,* 92 Ala. 30; *Browning* v. *State,* 30 Miss. 656.) It cannot be said that the jury could not have reached any other conclusion. The defendant Rosenberg denied having any connection with the crime, and it was essential to a fair trial that his testimony should go to the jury and be considered by them under the correct rule concerning his right to an acquittal if there was a reasonable doubt of his guilt.

The court refused to give to the jury the following instruction requested by the defendant:

"Although the jury are the sole judge of the credibility of the evidence and may convict on the evidence of accomplices alone, the law is that they shall not do so arbitrarily, and they must act on the testimony of accomplices with great caution, and only when they are satisfied from it and all the circumstances in evidence in the case that it is true. Such evidence is not, in legal estimation, as satisfactory as is the testimony of unimpeached or disinterested witnesses."

The rule of law concerning the testimony of an accomplice has been stated; and an instruction giving the rule to the jury and applying it to the case on trial should be given when asked. To this instruction was added the statement that the evidence of an accomplice is not, in legal estimation, as satisfactory in its nature as the testimony of unimpeached or disinterested witnesses, meaning, as applied

267 − 14

to this case, to convey the idea that Danies had been impeached or that his evidence was not satisfactory although the jury might believe it to be absolutely true, and the instruction was in the nature of an argument. The instruction was also an abstract statement of a supposed rule of law and was not applied to the case. It was not error to refuse the instruction.

For the error pointed out the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*