(No. 12726.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* L. P. PATTIN, Plaintiff in Error. ·

*Opinion filed December 17, 1919.*

CRIMINAL LAW—*testimony of an accomplice should be received with caution.* While the testimony of an accomplice is legal testimony and a conviction may be founded thereon, alone, such evidence is open to grave suspicion and should be acted upon with the utmost caution.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding.

WILLIAM M. MORAN, JR., (C. C. LEE, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, EMERY ANDREWS, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes to this court by writ of error to the circuit court of the county of Coles, in which plaintiff in error, Pattin, was found guilty by a jury and sentenced to the penitentiary under an indictment charging him with burglary and the larceny of eleven bushels of corn on July 11, 1917, from the crib of David Gray, located on his farm in said county.

At the time of the commission of the alleged offense, and for a number of years prior thereto, plaintiff in error resided in the village of Trilla and was engaged in farming and the taxicab business. He also owned a restaurant building in said village in which Harry Taylor was conducting a restaurant at the time in question. For some time previous to July 11, 1917, plaintiff in error and Herschel Richards, as co-partners, were engaged in the taxicab business in the village and surrounding territory. Richards operated

the automobile and had a key to the garage where the automobile was kept.  On July 11, 1917, Richards and Taylor took the automobile from the garage about midnight and drove to the corn-crib owned by David Gray and took therefrom about twelve bushels of corn and started on their return to Trilla.  While running upon the highway with the lights on the automobile turned out they ran into the rear of the buggy of William Scott, who was going in the same direction.  The buggy was overturned and badly damaged and the automobile was by the impact also overturned and thrown into the ditch at the side of the road.  Taylor was injured but escaped without discovery and returned to his room in the village, where he remained for the rest of the night in company with Claude Melton.  Scott immediately demanded that Richards purchase him a new buggy, to which Richards replied that it would be necessary for him to see plaintiff in error about it first.  Richards and Scott walked from the scene of the accident to the home of William Trower, in said village, from which place Richards went to the home of the plaintiff in error and called him out of bed, explaining to him that he had struck the buggy of Scott and that Scott was insisting upon settlement of the damages, and Richards asked plaintiff in error to return with him to the scene of the accident.  Plaintiff in error and Richards started for the scene of the accident and were at Trower's home joined by Scott and Trower.  Upon arrival at the scene plaintiff in error reprimanded Richards for taking the automobile and told him not to take any of the corn to his (plaintiff in error's) home.  The next day further negotiations were had with Scott, who was insisting upon a new buggy to replace his old one.  Plaintiff in error, upon seeking legal advice and being convinced of his liability, as a partner of Richards, for the damage done by the automobile, purchased a buggy for Scott and took the note of Richards for his share thereof.  Richards was indicted on the charge of burglary and larceny, found guilty

by a jury and sentenced to the reformatory. Taylor was later indicted and pleaded guilty to the charge of burglary and larceny and was sentenced to the penitentiary. Later plaintiff in error was indicted for the same offense.

It is not contended by the People that there is any evidence whatever to show that plaintiff in error in any way participated in the stealing of the corn. The evidence is undisputed that he was at home in bed at the time the crime was committed. The State contends, however, that the evidence shows that he was guilty as an accessory before the fact, Taylor having testified that plaintiff in error had told him, in the presence of Richards, that if they would get the corn in question he would dispose of it for them.

Numerous errors are assigned, some of which, however, are not argued or pressed in this court. It is most earnestly urged, however, that the verdict of the jury is contrary to the evidence; that certain instructions given on behalf of the People were erroneous, and that no valid record of the proceedings of the trial was kept.

The only direct evidence of the guilt of plaintiff in error was given by Taylor, who testified that two or three days before the commission of the crime he had a conversation with the plaintiff in error, who told him where the corn was, and that if Taylor and Richards would get the corn he would get rid of it for them. Taylor testified that this conversation was had in the presence of Richards. In this he is contradicted by Richards, who says that he never at any time had any conversation with plaintiff in error with reference to getting the corn in question and that he was not present when any such conversation was had between plaintiff in error and Taylor. Taylor is also contradicted in the essential parts of his testimony by other witnesses for the State. Eight witnesses, who, so far as the record shows, are reputable people of that community, declared that his reputation for truth and veracity in the community in which he resided was bad.

The only other testimony offered to show the guilt of plaintiff in error as accessory was the statement of Richards that on one occasion about six weeks before the commission of the crime, while he and plaintiff in error were driving on the highway near Gray's corn-cribs, plaintiff in error said, in effect, that if he were Gray he would be afraid that corn left out in the crib like that all winter would be stolen. The only other conversation with plaintiff in error testified to by Richards in which the subject of corn was mentioned was four days before the day of the theft. Richards testified that he owed plaintiff in error for some automobile tires and that Pattin asked him for the money, to which he replied that he had none, and that Pattin then told him to get him some corn in the place of money. There was nothing said as to how Richards was to get the corn or where the corn was to come from, nor was there anything in the record showing that he at any time suggested to Richards that he should get corn in any manner except legitimately. The evidence also shows that plaintiff in error advised Richards to defend against the charge made against him in the indictment and went with him while he (Richards) secured an attorney. The evidence does not show, however, that plaintiff in error in any way assisted in paying the attorney's fees. Richards was a minor and was a partner in the taxicab business. It is but natural that Richards would turn to plaintiff in error for advice. The mere fact that plaintiff in error advised Richards to contest the indictment when he had reason to believe Richards was guilty is not, of itself, sufficient to hold plaintiff in error guilty as accessory, either before or after the fact. In this record the conviction of the plaintiff in error rests almost entirely upon the testimony of Taylor.

Claude Melton, a witness for the People, testified that he had a conversation with Taylor after the indictment of Richards, and that he asked Taylor what he would do if he (Taylor) were also charged with the offense, to which Tay-

290 — 35

lor replied that he would swear that Richards and plaintiff in error had made it up and that that would clear him, Taylor. Melton also testified that he was in the restaurant of Taylor on the evening in which the crime was committed and was invited by Taylor and Richards to go with them and that he refused to do so; that when asked what was going to be done with the corn, Taylor said that he was going to take the corn to Mattoon and sell it and use the money to stock up his restaurant.

Taylor testified that the conversation with plaintiff in error concerning the taking of the corn occurred in Trilla, about nine o'clock in the morning, either two or three days before the commission of the offense. Two witnesses aside from plaintiff in error testified that for three days before the commission of the offense plaintiff in error was not in the village of Trilla at any time during the day but was working on a small farm in the country.

As we have seen, the case against the plaintiff in error depends almost entirely upon the testimony of Taylor, who stands as a confessed accomplice in this crime, and who stated upon the witness stand that he hoped to gain his liberty from the penitentiary on the ground of his testimony in the case. The testimony of an accomplice is legal testimony, and a conviction may be legally founded upon such testimony, alone, and such conviction sustained thereon. But such evidence is open to grave suspicion and should be acted upon with the utmost caution. (*People* v. *Feinberg,* 237 Ill. 348.) In addition thereto, in the instant case there is much evidence in the record tending to show that the testimony of Taylor is not entitled to weight. Under such a condition of the record we are convinced that plaintiff in error was not proven guilty beyond a reasonable doubt and that he was improperly convicted.

The judgment of the circuit court of Coles county will be reversed.                    *Judgment reversed.*