THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FLOYD JOHNSON, Plaintiff in Error.

*Opinion filed June 18, 1925.*

1. CRIMINAL LAW—*when conviction may be had on testimony of accomplice.* The testimony of an accomplice is legal and competent, and a conviction may be had on such testimony, although uncorroborated, if it is of such a character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant.

2. SAME—*testimony of accomplice should be acted upon with caution—instruction.* The testimony of an accomplice should be acted upon with great caution and only when the jury are satisfied from all the circumstances in evidence in the case that such testimony is true, and a refusal to so instruct the jury is prejudicial error where the conviction depends solely upon such testimony and the evidence of the defendant's guilt is inconclusive.

3. SAME—*when an instruction that reasonable doubt must arise from all the evidence is improper.* An instruction that a reasonable doubt, to justify an acquittal, must arise from the whole evidence and not from any particular fact in the case is improper, as the People must prove, beyond a reasonable doubt, every fact necessary to constitute the crime, and a reasonable doubt as to any such fact requires a verdict of not guilty.

4. SAME—*an instruction should not attempt to define reasonable doubt.* An instruction should not attempt to define a reasonable doubt, as it is difficult to find a more explicit definition of the term than the words themselves, and efforts to do so usually result merely in an elaboration of language without any corresponding amplification of the idea.

5. SAME—*when presumption of innocence will prevail—instruction.* If the evidence is equally consistent with guilt or innocence the defendant is entitled to the presumption of innocence and the

verdict must be not guilty, but an instruction stating that where there are two theories of the evidence, one justifying an acquittal and the other a conviction, it is the duty of the jury to acquit the defendant, is properly refused where it is not warranted by the facts.

6. SAME—*argumentative instructions on presumption of innocence may be refused.* Argumentative and obscure instructions on the presumption of innocence may be refused even though the presumption of innocence is not mentioned in any other instruction.

WRIT OF ERROR to the Circuit Court of Ogle county; the Hon. HARRY L. HEER, Judge, presiding.

GARRETT, MAYNARD & FELL, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, MARTIN V. PETERMAN, and VIRGIL L. BLANDING, for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

At the January term, 1925, of the circuit court of Ogle county Floyd Johnson was indicted, tried and convicted of the crime of receiving for his own gain a Ford sedan knowing it to have been stolen. This writ of error has been sued out to review the record on the grounds of the insufficiency of the evidence to sustain the verdict, error in instructions given and refused, and other errors occurring on the trial.

Johnson was a young man twenty-six years old who lived at Rockford, where he was employed in a garage. He was engaged to be married to Miss Violet Stine, who lived with her sister and the latter's husband, Herbert A. Kerston, at their home in Rochelle. Johnson was in the habit of going to Rochelle on Saturday evening to visit Miss Stine, staying all night at the Collier Inn. The sedan in question was stolen on the street at Sterling, Illinois, on Saturday night, October 4, 1924, and was driven to Rochelle, where it was parked in a side street near the Collier Inn about midnight and remained there all night. The next

morning it was driven by Johnson to the home of Kerston, John Green accompanying him, driving Johnson's car, which was a Durant roadster. The Ford sedan was then sold as the property of Green to Kerston for $450, who paid $75 on the purchase price by a check payable to Green. Kerston made a second payment of $150,—$30 in cash and a check for $120, dated October 11, payable to Johnson, which was indorsed by Johnson and delivered to Green, together with the $30 in cash received from Kerston.

The only criminating evidence against Johnson was furnished by the thief who stole the car, John Green. He testified that he had known Johnson about four years and about the middle of September learned that Johnson and Miss Stine had called to see him at his mother's house in Chicago when he was not at home; that he went to Rockford to the garage where Johnson worked, and Johnson told him that Kerston, a man living at Rochelle, wanted a car, and suggested that Green go with Ed Smith and get the car. About two weeks later Green met Johnson on the street. They again talked the matter over, and Green agreed to go with Smith and get a car. Johnson said they had better go out of the State to get it; that it could be sold for $460 cash to Kerston and no questions asked; that he would sell it to Kerston by claiming that someone owed him $450 and he was to get his money out of the car; that Johnson told Green that he was behind in his payments on his Durant roadster and would lose it unless he got the money to make the payment. Green said that he went with Smith on the evening of October 4 to Sterling in Smith's Oldsmobile car, and Smith stole the Ford sedan and drove to Rochelle while Green drove the Oldsmobile. The sedan was left parked on the street at the Collier Inn and the next morning they called on Johnson and showed him the car. Johnson told Green that he would have to go to Kerston with him to sell the car; that Johnson was expecting to marry the girl there and could not sell the car for as

much money as if it belonged to someone else. Green agreed that he would go, and that it should be represented to Kerston that Green owed Johnson $450 and was to pay him from proceeds of the car. It was so represented to Kerston, but Green testified the proceeds were in fact to be divided equally among the three, Johnson, Green and Smith.

Johnson denied that he suggested the stealing of a car or knew anything about the car being stolen. He testified that he had known Green about four years, and in the spring of 1924 Green told him he was to be married and asked for a loan of money to buy furniture with. Johnson lent him $450, taking his note for that amount dated April 28 and due in four months. It was not paid at maturity. Green had left Rockford, and Johnson drove to Chicago with Miss Stine in the first half of September, inquiring for Green at his mother's house there. Green was not there but his mother gave Johnson his address as 306 Madison street, Peoria. Johnson drove to Peoria and to other places looking for Green but did not find him. Green, however, called upon Johnson at the Collier Inn, in Rochelle, on Sunday, about September 20, and told him that he could not pay the money; that the only thing he could do was to give Johnson his sedan, and he showed the sedan standing there on the street. Green said he was going to Chicago that day but would bring the car to Rockford the following Thursday and leave it. He did not do so, and Johnson did not see him again until Green called on him at the Collier Inn on the morning of October 5. Johnson said to Green that Herbert Kerston might buy the car, but he could not drive both cars out and asked Green to drive the roadster. Green did so and the Ford car was sold to Kerston. After the sale Green said that he was broke; that he did not know what he would do; that he was on the road for the Consumers Company, and he asked if Johnson would let him have $225 to get a roadster in which to make his territory. Johnson agreed to do this,

and so the first money that Kerston paid, to the extent of $225, went to Green. The rest was to be paid to Johnson.

On this conflicting evidence the cause was submitted to the jury. According to the testimony of the thief who stole the car the theft was suggested by the defendant. According to the testimony of the defendant he had no knowledge that the car was stolen but took the car in good faith in payment of Green's debt to him. We shall not discuss the weight of the evidence, because errors in the trial require the reversal of the judgment and the submission of the case to another jury.

The plaintiff in error asked the court to instruct the jury in regard to the evidence of an accomplice, as follows:

"The court instructs the jury that while the testimony of an accomplice is admissible against a defendant in a criminal case, yet it is the law that the testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution. And the jury are instructed that they should subject such testimony to careful examination in the light of the other evidence in the case, and unless you are convinced of the defendant's guilt beyond a reasonable doubt you should find the defendant not guilty."

The court handed this instruction back to counsel, suggesting that the words "grave suspicion" be changed to "serious consideration," and this change was made, but the court refused to give the instruction and instructed the jury, without qualification, "that the uncorroborated testimony of an accomplice is sufficient to convict one of a crime." The law is that the testimony of an accomplice is legal and competent, and a conviction may be had on such testimony, although uncorroborated, if it is of such a character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant. (*People* v. *Rosenberg*, 267 Ill. 202; *Gray* v. *People*, 26 id. 344; *Cross* v. *People*, 47 id. 152; *Kelly* v. *People*, 192 id. 119.) It is also the law that the evidence of an accomplice is liable to grave suspicion

and should be acted upon with great caution, and only when the jury are satisfied from it, together with all the circumstances in evidence in the case, that it is true. (*People* v. *Feinberg,* 237 Ill. 348; *People* v. *Rosenberg, supra; People* v. *Pattin,* 290 Ill. 542; *People* v. *McKinney,* 267 id. 454.) The instruction asked was not an instruction on the facts or the weight or credibility of the testimony, for although the jury are the sole judges of the credibility of the evidence and may convict on the evidence of an accomplice, alone, still it is a principle of law that they shall not do so arbitrarily but they must act on the testimony of accomplices with great caution, and only when they are satisfied from it and all the circumstances in evidence in the case that it is true. (*Hoyt* v. *People,* 140 Ill. 588.) It is contended by the defendant in error that the substance of the instruction refused was contained in instructions 2, 5 and 15 given for the plaintiff in error. These instructions contained no advice to the jury as to the grave suspicion to which the testimony of an accomplice is subject or the caution which the law requires to be observed in acting upon it. There was sufficient reason why the instruction as to the manner in which the law looks upon the testimony of accomplices should have been given, and it can not be said that the evidence of the plaintiff in error's guilt is so conclusive that the refusal to give the instruction was not prejudicial.

The jury were instructed, on behalf of the People, that "the law does not require that the jury shall believe that every fact in a criminal case has been proved beyond a reasonable doubt before they can find accused guilty. The reasonable doubt the jury is permitted to entertain must be as to the guilt of the accused on the whole of the evidence and not as to any particular fact in the case." This instruction is of the same character as the instructions condemned in *People* v. *Davis,* 300 Ill. 226, *People* v. *Mooney,* 303 id. 469, and *People* v. *Prall,* 314 id. 518. While the law does

not require proof of every fact in the case beyond a reasonable doubt, and the doubt to justify an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact, yet a reasonable doubt as to the existence of any particular fact necessary to constitute the crime requires a verdict of not guilty, and it is necessary to a conviction that the People should prove, beyond a reasonable doubt, every fact necessary to constitute the crime. If one such fact is not proved by the measure of proof required by law, then the crime itself is not proved so as to authorize a conviction. It is not correct to say that a reasonable doubt as to any particular fact in a case is not sufficient to justify an acquittal, without distinguishing between facts which are material and constitute a necessary element of the crime and those which are not so material and necessary.

The fifth instruction given for the People was as follows:

"The court instructs the jury that a reasonable doubt means, in law, a serious, substantial and well-founded doubt, and not the mere possibility of a doubt. The jury have no right to go outside of the evidence to search for or hunt up doubts in order to acquit the defendant, not arising out of evidence, or for the want of evidence."

This instruction has been condemned in *People* v. *Andrae,* 295 Ill. 445, and *People* v. *Gardiner,* 303 id. 204. It is difficult to find a plainer or more explicit definition of reasonable doubt than the words themselves, and efforts to do so usually result merely in an elaboration of language without any corresponding amplification of the idea.

The plaintiff in error asked the court to give the following instructions, which were refused:

2. "The court instructs the jury that in this class of cases where there are two or more theories consistent with the evidence before you, one on which you could find the defendant guilty, and one of the other theories on which, consistent with the evidence before you, you could find the

defendant was not guilty, that it then becomes your duty to find the defendant not guilty, because the law of the land is that a man accused of crime is in the eye of the law presumed to be innocent of any and all crimes, and this presumption, as a matter of law, rests and abides with the defendant through his hearing of the case, and if there are two theories, one consistent with his guilt, and one consistent with his innocence, under the evidence before you, then it is your duty as jurors to give the defendant the favor of the doubt and find him not guilty."

4. "The court instructs the jury that the defendant is by law presumed to be innocent of the offense charged in the indictment, and this presumption may not be disregarded by the jury, for it is a substantial part of the law of the land. This presumption of innocence attaches to the defendant and is in his favor as soon as he is placed upon trial, and goes with him through all the trial and into the jury room with the jury as they deliberate what the verdict shall be. It is of itself sufficient to acquit the defendant unless and until it has been overcome by evidence which convinces the jury to a moral certainty of the guilt of the defendant of the charges made against him in the indictment, and in determining the guilt or innocence of the defendant you should have in mind always this presumption of innocence; after you have carefully considered all the evidence, including this presumption, then unless you can say under your oaths as jurors that you are satisfied to a moral certainty of the guilt of the defendant, it is your duty to find the defendant not guilty."

These instructions are argumentative and obscure and were properly refused for that reason. Instruction No. 2 assumes that this case is one of a class of cases in which there are two or more theories consistent with the evidence,—one on which the defendant could be found guilty and one on which he could be found not guilty,—and instructs the jury that it therefore becomes their duty to find

the defendant not guilty because of the presumption of innocence. If the evidence is capable of a reasonable explanation consistent with the innocence of the defendant there can be no theory on which a verdict of guilty can be based, because if the evidence is consistent with innocence it can not be said that guilt is proved beyond a reasonable doubt. In order to justify a conviction the evidence must not only be consistent with the guilt of the defendant but it must also be inconsistent with his innocence. If the evidence is equally consistent with guilt and innocence the defendant is entitled to the presumption of innocence and the verdict must be not guilty, but there cannot be two theories of the evidence, one of which would justify a verdict of guilty, the other a verdict of not guilty. The proposition on which this instruction is based,—that there may be two theories of the evidence, one justifying an acquittal and the other a conviction,—is without foundation and the instruction was properly refused. Instruction No. 4 merely states with great diffuseness and verbosity that the defendant is presumed to be innocent of the offense charged in the indictment; that the jury should give him the benefit of this presumption throughout the trial, including their deliberations, until they have reached a verdict, and that they should find the defendant not guilty unless, after having considered all the evidence and giving him the benefit of this presumption, they are satisfied of his guilt beyond a reasonable doubt. The presumption of innocence was not mentioned in any other instruction, and the first two sentences of this instruction might properly have been given to the jury, but the rest of the instruction was argumentative, and it was not error to refuse the whole instruction in the form in which it was asked.

For the errors in instructions which have been mentioned, the judgment will be reversed and the cause remanded for a new trial.          *Reversed and remanded.*