PEOPLE *v.* KNOLL.

1. INDICTMENT AND INFORMATION—ACCESSORY PROPERLY CHARGED AS PRINCIPAL—STATUTES.
    Under 3 Comp. Laws 1929, § 17253, one chargeable under common law as ''accessory before the fact,'' was properly charged as principal.

2. CRIMINAL LAW—CONSPIRACY—ORDER OF PROOF.
    Admission of acts and statements of co-conspirators before proof was offered of defendant's complicity is not in itself ground for reversal.

3. CONSPIRACY—WHEN CONSPIRACY EXISTS.
    Conspiracy exists when two or more persons combine to do criminal act.

---

As to definition of conspiracy, see annotation in 6 A. L. R. 940.
On presumption as to good character of accused, see annotation in 20 L. R. A. 609; 46 L. R. A. (N. S.) 342.

4. SAME—CRIMINAL LAW—STATUTES.

> When crime has been committed by one or more conspirators, each may be prosecuted therefor, under 3 Comp. Laws 1929, § 17253.

5. CRIMINAL LAW—CONSPIRACY—PROOF.

> In prosecution for crime where conspiracy exists, proof of conspiracy is but incidental to proving crime itself, and it need not appear that all of parties got together and agreed upon means for its accomplishment.

6. SAME—EVIDENCE—ORDER OF PROOF.

> In prosecution for robbery, incidents connecting defendant with crime should have been shown before submitting testimony of two co-conspirators as to what was said and done by them and a third one, but no reversible error resulted from order in which proof was submitted.

7. SAME—CROSS-EXAMINATION—TRIAL—INSTRUCTION.

> Cross-examination of defendant about quarter of beef taken from his meat market for delivery to his attorney, *held*, not error, in view of court's instruction as to defendant's right to pay his attorney in goods, and to disregard all reference thereto.

8. WITNESSES—CROSS-EXAMINATION—UNRESPONSIVE ANSWER—IMMATERIAL MATTERS.

> Where prosecuting attorney, called by defendant's attorney to show that he had to secure order from judge to permit him to see defendant after his arrest, in response to question, on cross-examination, as to whether there was great deal of running in and out of city hall that day, replied that there was—to the extent that tear gas bombs had to be used to keep people out, refusal of court to strike out said answer as unresponsive, *held*, not error; entire incident being irregular and having no bearing on guilt or innocence of defendant.

9. CRIMINAL LAW—WITNESSES—FAILURE TO CALL ACCOMPLICE NOT ERROR.

> Failure of prosecutor to call accomplice as witness in prosecution for robbery was not error, since rule that all witnesses to transaction, if present or attainable, should be called before defendant is put to his defense, does not apply to accomplice.

10. SAME—EVIDENCE—PRODUCTION OF ACCOMPLICE'S WRITTEN CON-
FESSION MAY NOT BE COMPELLED.

Refusal of court, in prosecution for robbery, to compel prosecutor
to produce accomplice's written confession, existence of which
was brought out on his cross-examination, *held,* not error.

11. SAME—PURPOSE OF INSTRUCTIONS.

Purpose of instructions by court is to enable jury to more
intelligently determine facts from evidence submitted, and to
apply law thereto.

12. SAME—REFUSAL OF REQUESTED INSTRUCTIONS.

Refusal to give requested instruction was not error, where ma-
terial substance embodied therein was covered by instruction
as given.

13. SAME—REQUESTED INSTRUCTION AS TO CREDIBILITY OF ACCOM-
PLICE.

Refusal of court to give requested instruction on credibility of
accomplice and weight to be given to his testimony, *held,* not
reversible error, in view of instruction given.

14. SAME—PRESUMPTION AS TO GOOD CHARACTER OF DEFENDANT—
REASONABLE DOUBT.

Court properly refused to give requested instruction that where
no evidence of good character has been offered by defendant,
law presumes character to be good, and such presumption of
good character may create reasonable doubt as to his guilt
and it will sometimes create doubt when no other would exist.

Appeal from Ottawa; Miles (Fred T.), J.  Sub-
mitted January 15, 1932.  (Docket No. 216, Calendar
No. 36,193.)  Decided April 4, 1932.

Leonard D. Knoll was convicted of knowingly
receiving stolen property.  Affirmed.

*Carl E. Hoffman (Clare E. Hoffman,* of coun-
sel), for appellant.

*Paul W. Voorhies,* Attorney General, and *John R.
Dethmers,* Prosecuting Attorney, for the people.

SHARPE, J. A bank at Hudsonville, in Allegan county, was robbed on the afternoon of Tuesday, the 28th day of July, 1931. John Peters and Henry Kraai were arrested, charged with such robbery, and on arraignment both pleaded guilty thereto. The defendant was also charged with the robbery, and, in a second count, with receiving stolen money, knowing it to have been stolen. He was convicted of the latter offense and sentenced to imprisonment in the State's prison at Jackson for from two and one-half to five years, and has appealed therefrom.

Peters and Kraai were both sworn as witnesses for the prosecution. They, one or both, testified, in substance, that they and Willis Gillette met at a lunch stand in the city of Holland conducted by Gillette; that the three of them drove in Gillette's Ford car to the meat market of the defendant; that Gillette went into the market and remained a few minutes; that when he came out he pointed to a Whippet car owned by the defendant, then standing in front of the market; that Peters got into this car and drove it away, and Kraai and Gillette followed in the Ford car; that when they had gone some distance in the country Kraai got out of the Ford car and into the Whippet with Peters; that they proceeded to Hudsonville, and with loaded guns entered and robbed the bank of about $4,000; that they then drove back to Holland, where the money was left in Gillette's lunch stand; that Kraai then went to the defendant's market and asked him if it would be all right to bring the car back for the reason that "everything went fine and that nobody had got the license nor the description of the car;" that defendant assented thereto; that he then discussed with defendant the money which should be paid to him; that Kraai then returned to the lunch stand

and Peters counted out and gave him $500, and that he then went and delivered it to the defendant, who said: "Just keep quiet and everything will be O. K."

Henry Aldrink testified that he saw Kraai and Peters return defendant's car to the market after the robbery, and Andrew Knoll testified that he saw Kraai come out of the meat market on one of the occasions testified to by him. The record contains the following:

"The testimony of those three girls, whom Kraai had named, corroborated the testimony of Mr. Kraai as to his having been in the market talking with Mr. Knoll on at least one of the three occasions testified to by Mr. Kraai. The girls testified that they saw Kraai go behind the counter and that Kraai and Knoll whispered with each other and one of them testified that Knoll winked at Kraai."

Under the common law, the defendant would have been charged as an "accessory before the fact." Our statute abolishes the distinction between an accessory and a principal.

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." 3 Comp. Laws 1929, § 17253.

Under it the defendant was properly charged as a principal. *People* v. *Wycoff*, 150 Mich. 449.

The defendant, as a witness in his own behalf, denied any connection with the robbery, or that he had ever had any conversations with either Kraai or Gillette concerning it.

In detailing the incidents which took place before they left Holland for Hudsonville, Peters and Kraai were permitted, over objection of defendant's counsel, to state what Gillette said to them and what they said to each other relative to the use of defendant's car and its return to his meat market after the crime was committed. The theory of the prosecution, as outlined in the opening statement of the prosecuting attorney, was that Gillette, Peters, Kraai and the defendant conspired together to rob the bank. The facts relative to the use of defendant's car, its return to him, the conversation between him and Kraai, and the payment of the $500 to him, clearly tended to establish such a conspiracy. Had these facts been first presented to the jury, the acts and declarations of each of them would have been admissible against the defendant. In *People* v. *Lay,* 193 Mich. 476, 491, the following from *Hamilton* v. *Smith,* 39 Mich. 222, was quoted with approval:

"Wherever two or more conspire together to commit an actionable wrong, everything said, done, or written by any one of them in the execution or furtherance of their common purpose is deemed to be so said, done, or written by every one and is a relevant fact as against each."

In *People* v. *Arnold,* 46 Mich. 268, 277, it was said that "the existence of a conspiracy must commonly be made out by the detached acts and statements of the individual conspirators." But the admission of such acts and statements, before proof was offered of defendant's complicity, is not in itself ground for reversal. In the early case of *People* v. *Saunders,* 25 Mich. 119, 120, the court said:

"It is complained that the acts and declarations of Winters were allowed to be given in evidence before proof had been made of any conspiracy. As

this exception regards the order of proof merely, we think it is not one that can avail in this court. The proper order of proof in cases of conspiracy is, first to give evidence of the unlawful combination, and afterwards to show the acts of the conspirators in pursuance thereof, or in some manner to connect them severally therewith. But it often happens that the existence of the conspiracy is only made out by inference from the acts and declarations of the several parties thereto; and to exclude evidence of these until the conspiracy is established in some other way would, in many cases, give the guilty parties immunity.''

The subject of ''conspiracy'' is reviewed at length in Underhill's Criminal Evidence (3d Ed.), beginning at p. 951, and a long list of authorities is cited in support of the views expressed. We summarize and quote from them as follows:

A conspiracy exists when two or more persons combine to do a criminal act; and, when the crime has been committed by one or more of them, under the statute above quoted, each may be prosecuted therefor. The proof of the conspiracy in such a case is but incidental to the proving of the crime itself. It need not appear that all of the parties got together and agreed upon the means for its accomplishment.

''The existence of the assent of minds which is involved in a conspiracy may be, and, from the secrecy of the crime, usually must be, inferred by the jury from proof of facts and circumstances which, taken together, apparently indicate that they are merely parts of some complete whole. * * * The safest rule is to satisfy the jury by a *prima facie* case that a conspiracy existed and then to offer evidence of the declarations of any conspirator. However, * * * the declarations are often received before there is any proof of a conspiracy, and then, if

the conspiracy be not shown, the jury is instructed to disregard the declarations. The rule is applicable where the conspirators are separately tried. * * * When men are associated for a common purpose, and with a common object in view, the law, presuming that the benefits, if any, which may ensue from their accomplishment, will be shared by all, impresses upon the conspirators or partners, collectively, the attribute of individuality so far as the common design is concerned. No member of the combination will be permitted to escape the consequences of the actions or words of his associates.''

The testimony of Kraai and Peters was a statement in detail of what was said and done by themselves and by Gillette and the defendant in their presence of the events which led up to the robbery of the bank and the return of the defendant's car and the payment to him of a share of the money secured thereby. While the incidents connecting the defendant personally with the conspiracy might more properly have been shown before the admission of testimony of their dealings with Gillete, no reversible error resulted from the order in which the proof was submitted.

On cross-examination of the defendant, he was asked about a quarter of beef which was taken out of his meat market and placed in the ice box in another store in Holland for delivery to his attorney. He was then asked if there were not ''scars or cuts'' in it, and if money was not concealed in it, and answered in the negative. In his instructions to the jury relative thereto, the court said:

''I think you should disregard this testimony entirely, as there is no connection shown between Mr. Knoll and the removing of these goods, Mr. Knoll, the respondent. Disregard the entire matter. A man has a right in a case to employ counsel and to pay them. If he does not have money with which to

pay them, he has a right to pay them in goods, so that there is no criticism there, and I think you should disregard it. I say you should disregard entirely all reference to this matter."

Jurors are intelligent, and questions such as were here asked, when met with a denial and unsupported by other proof, are quite as apt to create an impression favorable to the defendant as otherwise. The prosecuting attorney doubtless hoped to obtain a helpful admission from the defendant. We cannot say, in view of the instruction, that reversible error resulted from the inquiry concerning it.

One of the questions involved is thus stated by defendant's counsel:

"Was it permissible for the people to show that, when respondent was arrested, so large a crowd gathered at the city hall, where he was confined, that it was necessary to use tear bombs?"

Defendant's counsel claimed that he sought to obtain an interview with the defendant when he was taken into custody, and that he was obliged to secure an order from the circuit judge to permit him to do so. He called the prosecuting attorney as a witness to establish this fact. On cross-examination the prosecutor testified:

"*Q.* This was a serious situation that confronted you there in the city hall that day, was it not?

"*A.* Yes.

"*Mr. Hoffman:* I object to the question.

"*The Court:* The objection is sustained. It may be stricken.

"*Mr. Lokker:* All right.

"*Q.* There was a great deal of running in and out there that day, wasn't there?

"*A.* A great deal of it, to the extent that they had to use tear gas bombs to keep the people out of the place.

"*Mr. Hoffman:* I ask that that be stricken out as not responsive.

"*The Court:* Well, I think that is all part of the answer. It may stand."

The entire proceeding was irregular. The fact that defendant's attorney was not permitted to see him had nothing to do with the question of his guilt or innocence. That must be determined from the evidence submitted upon the trial. The purpose of counsel for defendant in offering it was to implant in the minds of the jury an impression that defendant had not been treated fairly by the prosecution, and to prejudice them in his favor. The fact elicited on cross-examination was no doubt intended to be explanatory of the reason why he was kept in close confinement. Counsel moved to strike out the answer because it was not responsive. We find no error in the ruling of the court in respect thereto.

Error is assigned upon the failure of the prosecution to call Gillette as a witness. It does not appear that his name was indorsed on the information. Counsel for the defendant say in their brief that he "was tried and convicted," doubtless as an accomplice of the other three, as there is no proof that he was present when the robbery was committed. The rule of law relied on by defendant's counsel, that all of the witnesses to a transaction, if present or clearly attainable, should be called before a defendant is put to his defense, does not apply to an accomplice. *People* v. *McCullough,* 81 Mich. 25; *People* v. *Resh,* 107 Mich. 251.

On cross-examination, Kraai testified that he had made a written statement of his connection with the crime, and that it was in the possession of the prosecuting attorney. Counsel for the defendant thereupon demanded its production. Error is assigned

upon the refusal of the court to enforce compliance therewith. No reversible error was occasioned thereby. *People* v. *Baxter,* 245 Mich. 229, and cases cited.

The court was requested by defendant's counsel to charge the jury:

"a. It is universally accepted that the testimony of one who claims to be an accomplice is liable to grave suspicion and should be acted upon with great caution and *only when the jury are satisfied and have considered all of the circumstances in the case;* the jury should subject such testimony to careful examination and consider the influence under which the testimony is given and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself or to gratify his malice.

"b. Where no evidence of good character has been offered by the defendant, the law presumes the character to be good, and such presumption of good character may create a reasonable doubt as to his guilt and it will sometimes create a doubt when no other would exist."

a. The trial court instructed the jury at considerable length as to the nature of the crime with which the defendant was charged and the duty of the people to establish his guilt beyond a reasonable doubt. He said, in part:

"If the facts which are established in this case to a moral certainty can be reconciled with any theory of the innocence of the respondent, then it is your duty as jurors to adopt that theory and acquit him."

He then elaborated at some length upon the application of this instruction to the question of reasonable doubt. He then said:

"The defense may prove the expectation of gain of any witness for the prosecution, whether founded upon any agreement with the prosecution or not, under which said witness for the prosecution testified, and, if the defense have made a showing that there is such expectation of gain, the testimony of such witness for the prosecution must be received with great caution. * * *

"You, and you alone, are the sole judges of the credibility of the witnesses and of the weight which is to be given to the testimony of the witnesses, and you are not to be guided or influenced in any manner in forming your opinion as to the guilt or innocence of the defendant by anything outside of the testimony in the case. * * *

"Now, I have reviewed that testimony somewhat at length, because it ought to be clearly before you just what the people claim about it. Now, in so doing, I am not attempting to express an opinion as to what I think about the truthfulness of it. Mr. Kraai has come into court and pleaded guilty to robbing this bank, together with Mr. Peters. He admits having been guilty of at least, or of two other crimes. Now, you take his testimony and weigh it in the light of your knowledge of Mr. Kraai, his past, the motives that may actuate him in giving the testimony that he has, and determine from all the facts and circumstances in the case whether or not Mr. Kraai has been a truthful witness in the case, and the same is true of Mr. Peters. He has also plead guilty in this case."

The contention of counsel that the instruction asked should have been given is based, in part, upon their claim that the testimony of Kraai was uncorroborated. They lose sight of the fact that there was evidence that Kraai returned the defendant's car to his place of business after the robbery, and that he was thereafter seen therein talking to the defendant.

The purpose of instructions is to enable the jury to more intelligently determine the facts from the evidence submitted, and to apply the law thereto. Many of the trial judges believe that they may more satisfactorily perform the duty thus imposed on them by giving such instructions in their own language rather than by reading to the jury those submitted to them in the form of requests. And, when the instruction as given fairly covers the material substance embodied in the requests, error may not be predicated upon such refusal. *People* v. *Kudla,* 223 Mich. 137.

In the early case of *People* v. *Jenness,* 5 Mich. 305, 330, it was said:

"We think the credibility of an accomplice, like that of any other witness, is exclusively a question for the jury; and it is well settled that a jury may convict on such testimony alone without confirmation. There is no good sense in always applying the same considerations in every case to every witness who may stand in the relation of *particeps criminis.* We think it is the duty of a judge to comment upon the nature of such testimony, as the circumstances of the case may require; to point out the various grounds of suspicion which may attach to it; to call their attention to the various temptations under which such witness may be placed, and the motives by which he may be actuated; and any other circumstances which go to discredit or confirm the witness, all of which must vary with the nature and circumstances of each particular case. But here we think the duty of the court upon this subject ends."

See, also, *People* v. *Wallin,* 55 Mich. 497, and *People* v. *Dunn,* 233 Mich. 185.

We find no change in the rule thus announced in any of the later decisions of this court. While defendant's counsel call attention to decisions of other

courts, in which it was held to be the duty of the court to give an instruction such as was here presented (*People* v. *Johnson*, 317 Ill. 430 [148 N. E. 255]; *McGinniss* v. *United States* [C. C. A.], 256 Fed. 621; *Egan* v. *United States*, 52 App. D. C. 384 [287 Fed. 958]), after carefully reading the instructions given, including the above quotations, we feel constrained to hold that the constitutional rights of the defendant were properly safeguarded thereby and that no reversible error resulted from the action of the court in this respect.

b. The court declined to give this request, and in this he was clearly right. *People* v. *Walls*, 231 Mich. 110.

Counsel discuss other matters in their briefs on which no errors were assigned, and insist that defendant did not have a fair and impartial trial. A reading of the record does not so disclose. The case was carefully tried and submitted to the jury in instructions of which no complaint can be well made.

The judgment is affirmed.

Clark, C. J., and McDonald, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.